SAYRE, JUDGE:
This claim was brought by Polino Contracting Inc., (“Polino”) for certain extra work, which the claimant alleges it performed while engaged in the execution of a contract (“The Contract”) with the Division of Highways (“Highways”) for the construction of a portion of Corridor H in Hardy County. This project is referred to as the Lost River Project and is designated by Highways as Project No. APD-0484(211)C (“the Project”).
Polino was required by Highways to place substantially more dumped rock *203 gutter[23] than was called for by Highways in its Invitation to Bid on the Contract. Polino contends there was, as a result, a significant change in the character of the work as defined by the Contract and it should be paid more for the dumped rock gutter actually placed than the unit bid price for dumped rock gutter agreed to in the Contract. Polino asserts specifically that it is entitled to be paid an additional $114,123.97 for the extra work and material required in placing the additional dumped rock gutter.
The Court, however, is of the opinion to deny this claim based upon the facts and circumstances set forth herein below.
Polino was the low bidder for the Lost River Project in Hardy County in the fall of2001. It was awarded the contract on November 28,2001. Construction of the proj ect was delayed because of environmental issues along Corridor H, which at the time were being addressed by Highways. Construction was actually begun by Polino in the spring of 2002. The Project involved cuts and fills with dirt ditches as well as construction of a bridge. It is the issue of the dirt ditches that forms the basis of this claim because completion of these ditches brought about the necessity for more dumped rock gutter than was anticipated when the bid packages were published by Highways. Highways determined during the course of construction that, to meet environmental concerns with the dirt ditches, it was necessary to place the additional dumped rock gutter to hold the soil at the sides of those ditches. The position of Highways is that Polino had a bid item in the contract for placing dumped rock gutter at the price of $10.00 per cubic meter.
There were a total of 936 cubic meters of dumped rock gutter indicated to be placed per the terms of the Contract. However, Polino subsequently was required by Highways to place a total of 7,300 cubic meters of dumped rock gutter during construction of the proj ect.[24] Highways paid Polino for the 7,300 cubic meters of dumped rock gutter at the unit bid price. Since there was a unit bid price in the Contract and Polino was compensated for all the dumped rock gutter at that price, Highways takes the position that it has paid for all of the work performed by Polino for the dumped rock gutter placed during the construction of the Project.[25] In fact, during the construction of this Project there were meetings conducted with representatives of Highways and Polino at which the need for additional dumped rock gutter was discussed and the consistent position of the representatives for Highways was that there would be no payment beyond the unit bid price for this item. Therefore, Highways contends that it is not obligated to pay Polino any ofthe additional $114,123.97 alleged by Polino to be due forthe dumped *204 rock gutter.[26]
During the construction of the cuts called for in the Contract, Polino obtained the rock for both the fills and the dumped rock gutter used on the Proj ect. Since only 936 cubic meters of dumped rock gutter was indicated in the Contract, Polino asserts it would be able to easily set aside this amount as the first cut was being made. This could be done by its employees at little cost as the rock was produced from the cuts. However, as the amount of dumped rock gutter needed on the Project increased, it became necessary for Polino to “manufacture” the rock needed. To do this, a laborer was required to use a piece of equipment known as a hoeram (a larger version of a jackhammer) to break larger pieces of rock into the size needed as dumped rock gutter. Then this rock had to be moved to the area where it was to be placed. Polino contends that this “manufacture” of rock used for dumped rock gutter constituted extra work for which it is entitled to an amount over the unit bid price of $10.00 per cubic meter. The amount of dumped rock gutter actually increased by approximately 800% over the amount in the original contract of 936 cubic meters.
Highways does not pay more than the unit bid price of an item bid as such in contracts unless the item change meets the criteria provided in the Standard Specifications Roads and Bridges § 104.11 Significant Changes in the Character of Work which states, in part, as follows:
If the alterations or changes in quantities do not significantly change the character of the work to be performed under the contract, the altered work will be paid for as provided elsewhere in the contract.
The term “significant change” shall be construed to apply only to the following circumstances:
a) When the character of the work as altered differs materially in kind or nature from that involved or included in the original proposed construction; or
*205 b) When, a major item of work, (any item having an original contract value in excess of 10 percent of the original contract amount or $50,000 dollars), is increased in excess of 125 percent or decreased below 75 percent of the original contract quantity. Any allowance for an increase in quantity shall apply only to that portion in excess of 125 percent of original contract item quantity, or in case of a decrease below 75 percent, to the actual amount of work performed.
Highways denies that it owes any additional compensation for the dumped rock gutter which was placed by Polino during this construction project. Highways acknowledges that there was an increase in the amount of dumped rock gutter used on the project but there was no material change in the character or value of the work, so it would not renegotiate the amount paid to Polino for the work. The original contract amount was approximately $ 18 million dollars of which only $9,360.00 was for the item of dumped rock gutter. Thus, the additional cost claimed by Polino does not meet the criteria set forth in § 104.11 (b) because the dumped rock gutter item was not in excess of ten percent (10% (at least $ 180,000.00 based upon this contract) of the original contract amount.
The Court has determined that there was no change in the character of the work performed by Polino in the placing of extra dumped rock gutter. Polino had a unit bid price in its contract for dumped rock gutter and the fact that it became necessary to place a larger quantity along the ditches constitutes a change in quantity only, for which Polino was paid by Highways at that unit bid price.[27] In fact, while the quantity increased by some 800%, there was no change in the character of the work because Polino had enough rock on the project to “manufacture” the dumped rock gutter. There was no necessity to borrow rock from a site off the project. Polino had to “manufacture” the additional dumped rock gutter through use of a hoeram and a laborer dedicated to that job. Of course, Polino had to move the rock with dump trucks to various sites but there was no necessity to bring additional or different equipment to the job site to perform the work for the “manufacture” of the additional dumped rock gutter.
The work performed by Polino for the dumped rock gutter does not meet the provisions of §104.11(b) which is the applicable section for the claim herein because the payment for this item did not exceed 10% of the contract bid price of $18 million dollars. Therefore, it is the opinion of the Court that Polino may not make a recovery for any additional amount of payment beyond the unit bid price for the dumped rock gutter placed during this construction project.
In view of the foregoing, the Court is of the opinion to and does deny this claim.
Claim disallowed.

 As explained by Randolph Epperly Jr., a former engineer with Highways and the Deputy State Highway Engineer for Project Development during the time of the construction project in the instant claim, dumped rock gutter is defined as rock that is generally various sizes but large enough to prevent it from being washed away. It is used for protection of ditches constructed for erosion control.

 Polino was paid an additional amount of $4,780.00 for grout placed on parts of the dumped rock gutter since there was no provision in the Contract for this particular item.

 The Court notes that evidence in this claim establishes that Polino was paid for all of the dumped rock gutter through several change orders and the basis for payments was the unit bid price provided by the terms of the contract.

 The testimony in this claim established that the additional dumped rock gutter resulted from concerns by the inspector with the Department of Environmental Protection who advised Highways that the sediment controls for erosion put forth in the contract (which included matting and seeding with grass for sediment control) was not sufficient for the hillsides along the ditches. Thus, Highways required its contractor (Polino) to place the additional dumped rock gutter which is defined as an erosion and sediment control item.
During the hearing, William F. Timmermeyer II, testified that he was an Environmental Enforcement Inspector for the Department of Environmental Protection which had given Highways a general permit for construction for storm water pollution prevention on this project. He conducted inspections at the project site to make sure that the plan was followed. If he noted that the approved plan was ineffective, then he advised personnel with Highways to modify its plan and do something different. It is the responsibility of Highways to determine the modification. Many times the change was to use dumped rock gutter. The original method was to use grass on the slopes but if the grass eroded, then some other method was needed to control erosion. He could not advise any modifications until the ditch was completely installed and had several rain events to determine the adequacy of the erosion method used per the contract plans. He described dumped rock gutter as “the most hardy type of armor” for erosion control.

 The Court notes that the unit bid price for the dumped rock gutter item varied greatly in bids submitted by other contractors from a high of $68.00 per cubic meter to a middle amount of $39.00 per cubic meter to a low of $ 10.00 per cubic meter by Polino. The Court will not speculate as to the amounts bid by the various contractors which submitted bids for this project because there are too many variables calculated by contractors when making bids for projects. The reasoning by each bidder certainly varies greatly, but no other contractor’s bid approached the $10.00 per cubic meter bid by Polino.